449 So.2d 839 (1984)
SCHOOL BOARD OF PINELLAS COUNTY, Appellant,
v.
Thomas A. RATEAU, Appellee.
No. AU-6.
District Court of Appeal of Florida, First District.
March 8, 1984.
Usher L. Brown, Associate Gen. Counsel, Orlando, for appellant.
Robert M. Todd of Mattson, McGrady & Todd, St. Petersburg, for appellee.
NIMMONS, Judge.
The School Board of Pinellas County (Board) seeks Section 120.68 review of a final order of the Florida Commission on Human Relations finding that the Board committed an unlawful employment practice based upon physical handicap under the "Human Rights Act of 1977" (Section 23.161 et seq., Florida Statutes, 1981), ordering the Board to cease and desist from discriminating against Rateau in violation of the Act and ordering the Board to pay Rateau the wages he would have received but for the discrimination. The Commission adopted en toto the DOAH (Division of Administrative Hearings) hearing officer's recommended order. We reverse.[1]
*840 The alleged discrimination centered around the Board's withdrawal of an offer of a temporary teaching contract due to Rateau's back condition.[2] On November 6, 1981, all principals in the Pinellas County school system were advised by Seymour Brown, Director of Secondary Placement and Substitute Teachers, that Rateau was eligible to substitute as a teacher in business education and mathematics for grades seven through twelve. The principal at Dunedin High School selected Rateau to fill a vacancy for a teaching position as a business education teacher for a period of 32 duty days beginning November 30, 1981, and ending January 25, 1982. The offer was conditional upon an acceptable medical certification. Rateau took the Board's medical form to a physician who examined him and completed the form. Although Dr. Guiterrez summarized Rateau's condition as "physically healthy," he included the notation "no heavy lifting" under the category "Restriction, if any."
The medical form was forwarded to the Board's physician, Dr. Baird, who then examined Rateau. Rateau told Dr. Baird that he previously had back surgery, that he has a current medical problem with his back and that he has resultant physical limitations. Rateau explained to Dr. Baird that while employed by the U.S. Postal Service an industrial accident exacerbated a pre-existing condition which was determined to be a tumor growing in his spinal column. Surgery subsequently removed that part of the tumor that had grown out of the bottom of his spine. He was terminated by the Postal Service as he was no longer able to perform the heavy lifting required by the job. Dr. Baird further learned from his interview with Rateau that he may need further surgery depending upon recurrence of growth in the tumor.
Dr. Baird contacted Patricia Diskey, Employment Coordinator for the Pinellas County school system, and asked her to advise him of the job's physical requirements. After being apprised of the duties of the job, Dr. Baird informed Seymour Brown that Rateau did not meet the physical requirements for employment as a business education teacher. Dr. Baird was of the opinion that there was a substantial likelihood that Rateau would aggravate his pre-existing condition. He testified that the frequent bending, stooping and lifting entailed in the job would present a substantial *841 risk of Rateau's further seriously injuring his back.
Patricia Diskey testified that the duties of a high school business education teacher included the ability to do frequent and heavy lifting of typewriters, computer components, and other office equipment. She stated that the job entailed having to bend down in order to have a clear view of the data processing screens used by the students, having to stand for long periods of time, moving books from classroom to classroom, and transporting equipment on occasion to the school's service center and returning with replacement equipment.
Barbara McGraw, a business education resource teacher for the Pinellas County school system and assistant supervisor of the Business Education Department, testified on behalf of the Board regarding the duties of a business education teacher. The duties she described were consistent with those already mentioned. She also explained the not infrequent problem of equipment failure at work stations in the classroom in which case it would be necessary for the teacher to replace the equipment with spare equipment stored in another area of the classroom. In these situations, it was not practical to rely upon custodial help since a written request for such help was necessary, and it would usually take 24 to 48 hours before custodial help was available.
The testimony summarized above was either unrefuted or expressly adopted in the "findings of fact" portion of the hearing officer's recommended order. Nevertheless, the hearing officer concluded:
I find the reasons for disqualifying Petitioner from the position for which he was otherwise qualified to be pretextual and devised for the primary, if not sole, purpose of keeping Petitioner off of the instructional staff in the Pinellas County school system.
The hearing officer was apparently led to the above conclusion by his findings: that no evidence was presented that the Board had ever required a business education teacher to demonstrate the kind of physical ability necessary to perform the duties described by the Board's witnesses; that Rateau "was not requested to demonstrate his capability or inability to lift equipment used in the classroom"; and that Dr. Baird "never includes a muscle-tone test in the examinations he conducts for teacher applicants."
The hearing officer applied the approach approved by the Supreme Court in the determination of whether there has been a violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C.S. §§ 2000e et seq.) proscribing discrimination because of "race, color, religion, sex, or national origin." See Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); McDonnell Douglas Corporation v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Essentially, the hearing officer reasoned that Rateau established a prima facie case of unlawful discrimination by his showing that he had a physical handicap (a bad back), that he otherwise met the qualifications for the position and that he was rejected for the position. Applying the principles of Burdine, the hearing officer stated that the burden then shifted to the Board "to articulate a legitimate nondiscriminatory reason" for Rateau's rejection. Of course, in a Title VII case, the employer would be expected to set forth reasons other than the protected status (race, color, religion, sex, or national origin) for the rejection of the employee or, in this case, employee applicant. However, in a case such as this, all the employer could do was to respond by affirming that the bad back itself was the very reason why Rateau was not hired. In a Title VII case, the employee, under Burdine and McDonnell Douglas, would then be expected to prove that the reasons (other than the protected status) articulated by the employer for rejecting the employee were pretextual. And that is where, in attempting to apply the Title VII approach to this case, one comes full circle, i.e. if the reason given by the employer for rejecting the employee was pretextual, then the real reason is presumed *842 to be the employee's protected status, in this instance the employee's bad back. It becomes apparent, therefore, that although the Title VII approach is helpful when the alleged discrimination, as in Title VII cases, is race, color, religion, sex or national origin, it is of little help  indeed serves to confuse  when the alleged protected status (bad back) is, and can legitimately be, the articulated reason for rejection.
Although not stating it as clearly as he could have, what the hearing officer apparently meant to say was simply that the physical requirements of the job were not as stated by the school officials and that Rateau could have, therefore, performed the job without substantial risk.[3] If there was competent substantial evidence to support that factual finding, then, of course, we are obliged to affirm the order.
Section 23.167(1)(a), Florida Statutes (1981), provides, in pertinent part:
(1) It is an unlawful employment practice for an employer:
(a) to discharge or fail or refuse to hire any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's ... handicap... .
Section 23.167(8) provides:
(8) Notwithstanding any other provision of this section, it is not an unlawful employment practice under this part for an employer, employment agency, labor organization, or joint labor-management committee to:
(a) Take or fail to take any action on the basis of... handicap ... in those certain instances in which ... absence of a particular handicap ... is a bona fide occupational qualification reasonably necessary for the performance of the particular employment... .
In a case such as this, the principal issue is whether the would-be employee, who admittedly has a bad back, will be able to perform the duties of the job without substantial risk of further injury to his back. Accordingly, most of the evidence presented at the hearing dealt with the condition of Rateau's back and the physical activities expected of a business education teacher in the Pinellas County school system. The medical testimony was quite clear that Rateau's back condition was such that he would be at substantial risk of further injuring his back if he were employed in the subject position assuming that the physical requirements of the job were as represented by the school officials. And, as previously noted, the evidence presented by the Board regarding the job's physical activities was virtually uncontradicted. There simply was not competent substantial evidence to support a finding that the subject job did not involve the kinds of physical activities described by every witness who testified concerning the job. Indeed, even Rateau did not seem to take serious issue with the Board's testimony as to what the job entailed physically. The thrust of his own testimony seemed to be that he had previously performed similar kinds of activities for a ten-week period as a substitute teacher in another school district in Colorado, which involved the lifting of business machines and "quite a bit of bending," with no adverse effects.
The hearing officer also observed in his recommended order that Rateau "was not requested to demonstrate his capability or inability to lift equipment used in the classroom." That observation leaves us nonplussed where the evidence before the hearing officer clearly showed that Rateau's condition would be at substantial risk were he to engage in such activity. If the hearing officer means to say that the Board was required to allow Rateau a "trial run" at the job, we disagree.[4]
*843 The hearing officer's apparent conclusion that the physical requirements of the job were contrived by the school officials in order to deny Rateau the job is sheer speculation. Certainly, it is not supported by competent substantial evidence. The Commission's final order adopting en toto the hearing officer's recommended order is, therefore, Reversed, and this cause is Remanded to the Commission, pursuant to Section 120.68(10), Florida Statutes, for the entry of an order dismissing appellant's petition.[5]
SMITH and WIGGINTON, JJ., concur.
NOTES
[1] An explanatory note concerning procedure and applicable statutory and rule provisions may be of some benefit here. Neither the parties nor the Commission sought to implement or rely upon, either in the proceedings below or on appeal, the provisions of Section 413.08(3), Florida Statutes (1981), which one writer has recently characterized thusly:

"The constitutional [Art. I, § 2, Florida Constitution] protection afforded physically handicapped workers in Florida is implemented, for public sector employees, by F.S. § 413.08(3) (1981)."
Gibson, Florida's Antidiscrimination Statutes: Time for Reassessment, Vol. 58 Fla.Bar J. 101 (February, 1984). Section 413.08(3) refers to "deaf, blind, visually handicapped, and otherwise physically disabled" persons. (e.s.) That section appears in Part I ("Blind Services Program") of Chapter 413 ("Vocational Rehabilitation") of the Florida Statutes (1981). Section 413.08(3) is obviously not limited to the blind, but the phrase "otherwise physically disabled" as used in that section is not defined. The closest definitions found in Part I of Chapter 413 are of the phrases "other severely handicapped" and "severely handicapped individuals" as defined in Section 413.033(2). However, that definitions section is expressly limited to the words and phrases used in Sections 413.032 through 413.037 and therefore has no bearing upon the meaning of "otherwise physically disabled" appearing in Section 413.08(3). We would also note that, unlike the provisions of Section 23.161 et seq., Florida Statutes (1981) (the provisions relied upon by the parties herein), Chapter 413 contains no procedural apparatus for the handling administratively of any complaints or grievances for violations of Section 413.08(3).
In any event, we are not called upon to determine whether Section 413.08(3) would have any application to Rateau's circumstances or condition inasmuch as he instituted proceedings strictly under the provisions of Section 23.161 et seq. by filing with the Florida Commission on Human Relations a complaint pursuant to Fla. Admin. Code Rule 22T-9.01 claiming to be aggrieved by a Section 23.167 unlawful employment practice. After an affirmative finding of reasonable cause to believe that an unemployment practice had occurred, and after failure to conciliate pursuant to Fla. Admin. Code Rule 22T-9.05, Rateau filed his Petition for Relief From Unlawful Employment Practice which was referred for hearing to the Division of Administrative Hearings Pursuant to Fla. Admin. Code Rule 22T-9.08.
[2] No question has been raised, either in the proceedings below or on appeal, as to whether the term "handicap" as used in Section 23.167 was intended to encompass persons with back injuries or conditions.
[3] The job requirements, therefore, were apparently the "pretext" about which the hearing officer was referring.
[4] Compare Zorick v. Tynes, 372 So.2d 133 (Fla. 1st DCA 1979). There, a blind person sought relief pursuant to Section 413.08(3), Florida Statutes (1977), by reason of the Clay County School Board's refusal to employ him. This Court upheld the circuit court's order requiring "trial employment" to determine whether he was able to perform the job satisfactorily. Essential to the court's affirmance was the particular language of Section 413.08(3):

"[N]o employer shall refuse employment to the ... blind ... unless it is shown that the particular disability prevents the satisfactory performance of the work involved." (e.s.)
We observed in Zorick:
"`Unless it is shown' is the heart of Section 413.08(3). The Legislature might have omitted `unless it is shown' from the bill and still have produced a conventionally understandable law. No employer shall refuse employment to the blind unless blindness prevents satisfactory performance of the work involved. Such a law would presumably be understood as permitting the plausibly rational but untested opinions of public employers, having discretion, to prevail in effortless litigation against opinions of the untested blind. But the Legislature did not omit `unless it is shown,' and we ungrudgingly give those words their natural effect."
[5] We have considered and reject the Board's other point on appeal regarding the alleged failure of the Commission's final order to address the Board's exceptions to the hearing officer's recommended order.