**Paul E. KELLEY, Plaintiff,**

v.

**BECHTEL POWER CORPORATION, Defendant.**

No. 85–0624–Civ.

United States District Court, S.D. Florida, Miami Division.

March 13, 1986.

Albert J. Hadeed, Southern Legal Counsel, Inc., Gainesville, Fla., Neil Chonin, Chonin & Sher, Coral Gables, Fla., for plaintiff.

David V. Kornreich, Muller, Mintz, Kornreich, Caldwell, Casey, Crosland, & Bramnick, P.A., Miami, Fla., for defendant.

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

HOEVELER, District Judge.

THIS CAUSE having come before the Court upon the parties' cross-motions for summary judgment, and the Court having heard argument on the matter and being otherwise fully advised in the premises,

THE COURT finds the following:

Plaintiff PAUL KELLEY is a boilermaker mechanic, a member of the local union. In November 1982 he was referred by his union to work at the Turkey Point nuclear power facility, owned by Florida Power & Light but operated by Defendant BECHTEL POWER CORPORATION ("Bechtel").

A portion of the work of a boilermaker mechanic at Turkey Point involves repair work, i.e., welding and pipefitting, in a "containment area." The containment area is radioactive, and each person who enters it must wear protective clothing (PCs) under Nuclear Regulatory Commission regulations. One of the items of required clothing is a respirator, which protects a wearer from breathing air contaminated by radioactive materials. All persons whose work takes them into a containment area must wear full PCs, including respirator, and must be cleared for respirator use by a local physician after passing a respirator physical. 10 C.F.R. § 20.103(c)(2)(1985); 29 C.F.R. § 1910.134(a)(10); Nuclear Regulatory Commission, Guide 8.16 (October 1976).

After referral to Bechtel by his union, Plaintiff underwent, on November 29, 1982, a required respirator physical examination. The examination consisted of the taking, by a non-medical staffer, of Plaintiff's blood pressure, pulse, height and weight. The examination contained a section, "Summary of Defects and Diagnoses," pertaining to the subject's medical history and medications currently being taken. Plaintiff responded to this section by stating that he had been diagnosed as an epileptic several years earlier, was currently taking prescribed anticonvulsant medication, had never had a seizure but had had some "minor activity," and his last four electroencephalograms (EEGs) had been normal. The examiner's statement of examinee's present health found Plaintiff to be in "Good Health-Dilantin and Phenobarbitol Daily." Upon receipt of the respirator examination, Defendant's local physician, J.J. Hutson, M.D., an occupational physician with over 30 years' experience, noted that the subject, Plaintiff Kelley, had "seizure disease."

On December 3, 1982 Plaintiff was terminated from employment at Bechtel for failing his respirator physical. The Notice of Termination provided that Plaintiff was eligible for rehire upon presentation of a statement from his physician stating that Plaintiff "is under his care, and is in satisfactory physical health to work in the specific conditions existing for his assignment at the jobsite."

On December 6, 1982, Plaintiff's physician, Simon E. Markovich, M.D., a neurologist with over 30 years' experience, sent Bechtel a letter stating that Plaintiff was a patient under his care, his physical and neurological examinations are entirely normal, and that he should have no limitations in the performance of his work.

On December 7, 1982, Plaintiff was given another respirator physical. The results were similar; upon receipt of the examination Dr. Hutson found Plaintiff medically qualified to wear a respirator under the condition that Plaintiff may not go into a restricted access area or work in a buddy system where workers are dependent on each other for safety.

On December 10, 1982, Plaintiff was terminated again from employment with Bechtel at Turkey Point. On the Notice of Termination it was explained that the Company Doctor established limitations on his work and recited the doctor's reasons.

Plaintiff then filed a Complaint of Discrimination with the Florida Commission on Human Relations (FCHR). He alleged that Bechtel discriminated against him on the

basis of his handicap (epilepsy) by terminating his employment in violation of the Human Rights Act of 1977. The Determination of Cause, FCHR No. 83–0842, found, on a preliminary basis, cause for Plaintiff's charge of discrimination and specifically found Plaintiff handicapped within the meaning of Section 760.10(1), Fla.Stat., by reason of his "convulsive disorder." The Determination of Cause cited the case of *Fenesy v. GTE Data Services, Inc.,* 3 Fla. Admin.L.Rep. 1764–A (1981).

On March 28, 1984, Defendant requested that the FCHR redetermine Kelley's complaint. Bechtel asserted that in light of the lack of a definition of the term "handicap" in either the Florida Human Rights Act or the Florida Administrative Code, the term "handicap" should be defined as it is under Section 7 of the federal Rehabilitation Act of 1973, 29 U.S.C. § 706(7)(B) (Supp.1976–1982). Bechtel's letter to the FCHR suggested that the case of *E.E. Black Ltd. v. Marshall,* 497 F.Supp. 1088 (D.Hawaii 1980) be used as a guideline for defining the term "handicap."

On April 23, 1984, the FCHR granted Bechtel's Request for Redetermination, remanding the cause for supplemental investigation. On August 15, 1984, the FCHR affirmed its determination of cause and denied Bechtel's Request for Redetermination.

Plaintiff instituted the instant cause in state court on February 8, 1985. The case was removed to federal court in March 1985. The jurisdictional basis for removal was diversity jurisdiction.

## I. Definition of "handicap."

Defendant argues that since the term "handicap" is not defined in the Florida Human Relations Act of 1977, Chapter 760, Fla.Stat., the definition of "handicapped person" found in the federal Rehabilitation Act, 29 U.S.C. § 706(7)(B) should be applied:

(1) Handicapped individual means any person who (i) has a physical or mental impairment which substantially limits one or more major life activities, (ii) has a record of such impairment, or (iii) is regarded as having such an impairment.

Defendant argues that under federal case-law an individual is not handicapped if his impairment only interferes with his ability to do a particular job for a particular employer, but does not significantly decrease that individual's ability to obtain satisfactory employment elsewhere. See *Jasany v. U.S. Postal Service,* 755 F.2d 1244 (6th Cir.1985); *E.E. Black, Ltd. v. Marshall,* 497 F.Supp. 1088 (D.Hawaii 1980). Defendant asserts that the FCHR has "essentially accepted the above federal definitions." *Bisbee v. Thatcher Glass Manufacturing Co.,* 3 Fla.Admin.L.Rep. 892–A, 893–A (1981).

In *Bisbee,* supra, the FCHR found that the Petitioner's heart and knee conditions "result[ed] in substantial limitations of Petitioner's major life activities." *Id.* at 893–A. While it is true that the language in *Bisbee* tracks the definition of "handicapped individual" in 29 U.S.C. § 706(7)(B), the FCHR does not expressly state that the federal definition of "handicapped individual" has been adopted by the FCHR, and points to no authority for its reliance on the federal terminology.

More recent decisions of the FCHR demonstrate that the definition of "handicap" under the Florida Human Rights Act is not that found in the federal statute. Rather, the Commission has chosen to give "handicap" a meaning in accordance with common usage.

"A person with a handicap does not enjoy, in some measure, the full and normal use of his sensory, mental, or physical faculties." *Chicago, Milwaukee, St. Paul and Pacific Railroad Company v. Washington State Human Rights Commission,* [87 Wash.2d 802, 557 P.2d 307 (1976)]."

*Fenesy v. GTE Data Services, Inc.,* 3 Fla. Admin.L.Rep. 1764–A, 1765–A (1981), Dept. of Administrative Hearings, Case No. 80–473, Order of December 31, 1980 at 14; See. e.g., *Florida Comm'n. on Human Relations v. Brevard County Sheriff's Dept.,* 4 Fla.Admin.L.Rep. 604–A, 608–A

(1982), rev'd on other grounds, 429 So.2d 1235 (Fla. 5th DCA 1983); *Hydu v. Arab Pest Control Co.*, FCHR Case No. 80–0592 (Dec. 1, 1982).

This Court finds that the FCHR definition of "handicap" as set forth in *Fenesy*, supra, is the applicable definition in this cause. The Court defers to the agency's definition. *Dept. of Prof. Reg. v. Durrani*, 455 So.2d 515, 517 (Fla. 1st DCA 1984). Thus, the Court rejects the contention of Defendant that the federal definition applies to this cause. Since the federal definition of "handicapped individual" does not apply, the caselaw construing the federal definition is a less appropriate guide here than the Florida administrative decisions. The FCHR had the opportunity to adopt the federal definition in this cause, yet declined to do so.

Accordingly, Bechtel's Motion for Summary Judgment that the federal definition of "handicapped individual" be made applicable to this action under the Florida Human Rights Act is hereby DENIED as a matter of law.

## II. Can Plaintiff be covered as a "handicapped individual" by the Human Rights Act even if he claims he is not in fact handicapped?

Plaintiff's position is that he does not suffer from any mental or physical impairment which affects his employability with Bechtel or any other entity. Plaintiff contends that Bechtel denied him employment because it concluded that he was at substantial risk of having a seizure and therefore had a disqualifying handicap. The Court finds that Bechtel did deny Plaintiff employment on the ground that it concluded that Plaintiff's seizure disease presented too great a risk to allow him to work in the restricted access (containment) area. Affidavit of J.J. Hutson, M.D., May 31, 1985 at 2.

It is not seriously disputed that but for Plaintiff's historical diagnosis of seizure disease and his prescription for anticonvulsants Plaintiff would not have been terminated. Thus, Defendant perceived Plaintiff to be handicapped within the meaning of the term as used in *Fenesy, Brannon,* and *Hydu,* supra.

Plaintiff vigorously asserts that although he is not in any way handicapped or physically disqualified for any kind of work, since Defendant perceived him as being handicapped, the protection of the Human Rights Act should be extended to him. The FCHR has in two cases included in its criteria for determining if a person is entitled to coverage under the Act whether the employer perceived the person as being handicapped. See *Simmons v. Citizens Advisory Council on Aging*, FCHR Case No. 80–1461 (Aug. 12, 1982) at 4; *Hydu*, supra, at 5–6.

The rationale for extending the protection of the Florida Human Rights Act of 1977 to one in Plaintiff's situation is well stated in a Washington case:

> It would be an anomalous situation if discrimination in employment would be prohibited against those who possess the handicap but would not include within the class a person 'perceived' by the employer to have the handicap.

> The essence of unlawful employment discrimination is the application of unreasonable generalizations about people to the hiring, promotion and discharge of workers....

> [A] person who is perceived to be afflicted with epilepsy may be discriminated against because of his or her perceived handicap even though that perception turns out to be false.... Prejudice in the sense of a judgment or opinion formed before the facts are known is the fountainhead of discrimination engulfing medical disabilities which prove upon examination to be unrelated to job performance or to be nonexistent. The intent of the law is to protect workers against such prejudgment based upon insufficient information.

*Barnes v. Washington Natural Gas Co.*, 22 Wash.App. 576, 591 P.2d 461, 464–65 (Wash.Ct.App.1979).

Bechtel argues that it did not consider Plaintiff to be handicapped. Defendant maintains that it considered Plaintiff only to be unqualified to perform unrestricted respirator work. This argument is geared to the holdings in the federal cases of *Jasany* and *Black*, supra, which the Court has found inapplicable to the present cause. The FCHR definition of "handicap" states that a person with a handicap does not enjoy the full and normal use of his physical faculties. Defendant's argument, if couched in terms of the FCHR definition rather than the analogous federal definition, would be that Plaintiff *does* enjoy the full and normal use of his physical faculties, but wearing a respirator under the conditions of the containment area is not a "normal" use of his faculties. Defendants might argue that the job sought by Plaintiff requires more than the "normal" use of physical faculties, and simply because Plaintiff is considered unqualified to perform unrestricted respirator work does not mean that Defendant perceived him as being handicapped for all forms of work.

However, the affidavit of Dr. Hutson shows that Dr. Hutson did not know exactly what the duties of Kelley would be. See Affidavit of J.J. Hutson, M.D. at 26, 80. Therefore, without precise knowledge of what the job entailed, the argument that Kelley's work was not "normal" and that the Human Rights Act does not require an employer to hire handicapped persons to do jobs that require more than "full and normal" physical health would have to fail. See also Affidavit of Simon Markovich, M.D. at 44–47 (stating that in his opinion, the conditions of the jobsite would not make Kelley a particular seizure risk).

■ Therefore, Plaintiff has adequately shown that it was his diagnosis of seizure disease and his prescription for anticonvulsants, both indicia of his handicap, that led Defendant to perceive him as having a seizure disease which precluded him from employment. Thus, while the Court recognizes that it is in no way bound by any determination made by FCHR in this cause, the Court agrees with the FCHR that Plaintiff is covered under the Human Rights Act. Plaintiff's Motion for Summary Judgment that he is covered by the Act is GRANTED; Defendant's Motion for Summary Judgment that Plaintiff is not a handicapped person under the Act is DENIED.

### III. Was the determination by Bechtel that Plaintiff could not perform the job in question made on a reasonable basis?

■ The Court notes at the outset that for the purposes of ruling on whether the company physician had a reasonable basis for making his determination that Plaintiff was not qualified to perform the job for which he was hired, the Court must consider only whether the information available to the company physician at the time of his determination provided a reasonable basis for such determination. Information adduced after the company physician's determination should not be used by the court in ruling on whether the physician had a reasonable basis. *Treadwell v. Alexander*, 707 F.2d 473, 477 (11th Cir.1983).

Defendant decided that Plaintiff could not work at his assigned job despite the clearance letter from his physician because, *inter alia*, it believed that persons with seizure disease, even if cured or controlled, are more apt to have a seizure than persons not diagnosed as suffering from seizure disease.

This Court finds that the procedure used by the Defendant in making its determination was not adequate. Dr. Hutson was faced with information that presented him with at least an arguable basis to conclude that Plaintiff was not afflicted with seizure disease such that the doctor was not entitled to make a peremptory decision as to Plaintiff's employability based on generalized knowledge about epileptics or persons with seizure disease.

The Defendant, through its company physician, did not make an individualized determination that Plaintiff presented a substantial risk of having a seizure on the job. The company physician charged with

the ultimate decision as to Plaintiff's qualification never examined the Plaintiff, never requested the medical records of the Plaintiff, never ordered any neurological testing or other testing designed around the conditions of the job, and did not endeavor to communicate with the Plaintiff's treating physician, located in the same city, to clarify any questions the company physician may have had. The Court can only conclude, based upon the deposition testimony and affidavit of the company physician, that in this instance generalized information and knowledge about epileptics and persons with seizure disorders, rather than information obtained through an individualized investigation of a specific person, was used in making the determination that Plaintiff was unfit to perform the job for which he was hired. The Defendant's decision must "reflect a well-informed judgment grounded in a careful and open-minded weighing of the risks and alternatives," and must avoid being "simply conclusory statements" or "reflexive reactions." *Arline v. School Bd. of Nassau County*, 772 F.2d 759, 765 (11th Cir.1985).

> ".... [I]n some cases, a job requirement that screens out qualified handicapped individuals on the basis of possible future injury is necessary. However .... in order to exclude such individuals, there must be a showing of a reasonable probability of substantial harm. Such a determination cannot be based merely on an employer's subjective evaluation or, except in cases of a most apparent nature, merely on medical reports. The question is whether, in light of the individual's work history and medical history, employment of that individual would pose a reasonable probability of substantial harm.
>
> Such an evaluation necessarily requires the gathering of substantial information by the employer.
>
> \* \* \* \* \* \*
>
> .... [A]n employer must gather all relevant information regarding the applicant's work history and medical history, and independently assess both the proba-

bility and severity of potential injury. This involves, of course, a case-by-case analysis of the applicant and the particular job.

*Mantolete v. Bolger*, 767 F.2d 1416, 1422–23 (9th Cir.1985). Defendant did not obtain either a work history or a medical history of the Plaintiff. If the company physician had obtained a work history of Plaintiff, he would have found that Plaintiff had worked at the job in question without incident both in 1976 and 1981, and would have further found material from Plaintiff's treating physician from 1981 clearing him for work.

 Defendant argues that if an employer can establish that the physical requirements of a job are such that the employee would be at substantial risk of injury if he were employed in that job, then the employer is not required to employ the individual. *School Bd. of Pinellas County v. Rateau*, 449 So.2d 839 (Fla. 1st DCA 1984). Defendant's assertion is true. However, in *Rateau*, the communications among the school board's physician, the various personnel officers of the school board, and the prospective employee Rateau, coupled with the personal examination and interview of Rateau by the school board's physician, as well as the complete gathering of information about the applicant and the specific duties of his job, provided a sufficient basis for the school board to determine that Rateau's back condition presented a substantial risk of injury. In the instant cause there was no such thorough gathering and analysis of the pertinent information. In order for *Rateau* to be applicable to this cause, the Defendant must establish that it familiarized itself thoroughly with the job's requirements and conducted a complete investigation into the job applicant's medical background. Defendant did neither of these prerequisites under *Rateau*. As Defendant admits in its October 11, 1985 Memorandum in Opposition to Plaintiff's Cross Motion for Partial Summary Judgment, "that Bechtel had a 'lot of information' before it in making its determination is rebutted by the record."

*Id.* at 12. The Court does not reach the question of how much information was needed by Bechtel before it had a reasonable basis for making its decision. The question of how much information depends on the individual case. However, the Court finds that additional information should have been obtained for a reasonable determination of substantial risk.

In the instant cause, the two pieces of information before the company physician either cancelled each other out or militated more heavily toward a finding that the plaintiff did not present a substantial risk of seizure on the job. Either way, additional steps to clarify the conflict needed to be taken by the company. For example, Dr. Markovich, a neurologist of long experience, was in Miami and was available to be contacted. While the Court is cognizant of the demand on physicians' time, Dr. Hutson could, with little difficulty, have called Dr. Markovich to make further inquiry (especially since Defendant contends that Dr. Markovich's letter in support of Plaintiff did not address the specific job conditions) or requested Plaintiff's medical records.

Further, the record reflects that not all epileptics suffer seizures. Based upon the information before him, Dr. Hutson diagnosed seizure disease despite a clear statement that Plaintiff had never had a seizure. Dr. Hutson would not approve Kelley because Kelley had an "excellent" chance of experiencing a recurrence of his seizure disease no matter how long he had been seizure-free. It is uncontroverted, however, that Plaintiff's respirator physical statement expressly noted that Plaintiff stated that he had never had a seizure. It is unreasonable to deny a person employment because of a fear of recurrence of a condition which that person has asserted he has never had, when there is no evidence showing that Plaintiff had ever had a seizure. It is true that Plaintiff was taking medication commonly prescribed for epileptics, but the possibility remained, and was not inquired into, that there had been in the Plaintiff's medical past, a misdiagnosis (opinion of Dr. Markovich). Without further inquiry it was unreasonable for the company physician to assume Plaintiff's seizure disease, despite Plaintiff's prescription for anticonvulsants, when Plaintiff specifically denied ever having had a seizure, and to assume, without further specific inquiry, that if Plaintiff did have a "seizure disease," his disease was so severe that it presented substantial risk that Plaintiff was a hazard both to himself and to other employees.

## IV. Plaintiff has made out a prima facie case of unlawful discrimination.

■ The FCHR has adopted federal standards for allocating the burden of proof in handicap discrimination claims. See, e.g., *Hunter v. Winn-Dixie Stores, Inc.,* FCHR Case No. 82–0799 (Feb. 23, 1983).

A prima facie case requires the plaintiff to prove:

(1) he is within the class to be protected;

(2) he otherwise meets the qualifications for the position, and he was rejected for that position; and

(3) after his rejection, the position remained open and the employer continued to seek applicants of like qualifications.

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668, 677 (1973).

Plaintiff has shown above that he is within the class protected by the Human Rights Act because Bechtel perceived him as suffering from a diagnosed chronic disease for which he had been prescribed, and was taking, medication. Bechtel terminated him because the company physician could not be reassured that Plaintiff would not suffer a seizure on the job. Plaintiff's ability to do the job while wearing a respirator, except for his seizure risk, was testified to in deposition by Bechtel's physician. Plaintiff's employment history confirms Plaintiff's ability to perform the exact job for which he was not employed. Plaintiff had worked as a boilermaker repairman without incident twice before at Turkey

Point, once for Chicago Bridge and Iron, and once for Bechtel itself.

As to the third element of the prima facie case, the record shows that Bechtel did hold the job open for persons of like qualifications, and did hire successors to the Plaintiff.

Plaintiff has made the required showings for a prima facie case of unlawful employment discrimination by reason of handicap, and accordingly, summary judgment on that point is hereby GRANTED in favor of Plaintiff.

### V. Has Bechtel met its burden of persuasion as to whether Plaintiff could safely and efficiently perform the job?

Once the plaintiff has made his prima facie case, the burden of persuasion shifts to the employer to show that the criteria used for making the employment decision are job-related and that the plaintiff could not safely and efficiently perform the job. See *Treadwell v. Alexander*, 707 F.2d 473, 475 (11th Cir.1983). Here the only issue presented is whether the employer has shown that the Plaintiff could not safely and efficiently perform the job, based on the company physician's belief that the Plaintiff could have a seizure while in the containment area, thereby subjecting himself to potential hazard.

Bechtel's summary judgment motion sets out as the standard whether the employer had a reasonable basis for its assessment of substantial risk of injury. Based upon the record, the company physician did not base his assessment upon Plaintiff's substantial risk of having an on-the-job seizure. Rather, he determined that the Plaintiff was not respirator qualified for his particular job "no matter what history of absence from seizures is present," because he could not be guaranteed "that [Kelley] will never have another seizure" and "[t]he possibility of his having a seizure still existed." The company physician's determinations do not show that his determination was based upon his knowl-

edge of and familiarity with Plaintiff's personal medical condition and history.

The company physician did not make an individualized determination of the degree of risk presented by Plaintiff. There was nothing in the record before him that indicated that Plaintiff was subject to a substantial risk of having seizures (the record before Dr. Hutson consisted of the respirator examination reports and the letter from Dr. Markovich). The Supreme Court has held, in a case under the analogous federal anti-discrimination law, that the "mere possession of a handicap is not a permissible ground for assuming an inability to function in a particular context." *Southeastern Community College v. Davis*, 442 U.S. 397, 405, 99 S.Ct. 2361, 2366, 60 L.Ed.2d 980, 988 (1979).

Further, where there is no evidence showing that Plaintiff himself understood the medical terminology needed to describe accurately his condition, and the company physician has relied solely upon a medical report submitted by a non-physician about whose qualifications and credentials the company physician knew nothing, and where the answers to the examination questions were given by a layman, there was no reasonable basis for making the diagnosis.

Accordingly, Plaintiff is entitled to partial summary judgment that he has met his burden of proving discrimination. Bechtel has not met its burden of proving that Plaintiff could not safely and efficiently perform his job, since regardless of the ultimate decision made, the methods used by the Defendant were insufficient to conclude reasonably that Plaintiff was subject to a substantial risk of on-the-job seizure.

### VI. Has Bechtel established the affirmative defense of a bona fide occupational qualification?

Bechtel asserts that the absence of the Plaintiff's "handicap" was a bona fide occupational qualification (BFOQ).

The Human Rights Act, § 760.-10(8), Fla.Stat. (1983), provides for a BFOQ

defense. The FCHR has referred to federal standards for its interpretation of BFOQ. *Florida Comm'n. on Human Relations v. Brevard County Sheriff's Dept.*, 4 Fla.Admin.L.Rep. 604–A, 608–A (1982), rev'd on other grounds, 429 So.2d 1235 (Fla. 5th DCA 1983). Since the BFOQ is an affirmative defense, the employer admits discrimination against the particular class and then carries the burden of proving:

(1) The qualification is "reasonably necessary" to the essence of the business operation; and

(2a) There was reasonable cause to believe, that is, a factual basis for believing that all, or substantially all, of the excluded class would be unable to perform safely and efficiently the duties of the job involved; or

(2b) It is impossible or highly impractical to deal with the members of the group on an individualized basis.

*Usery v. Tamiami Trail Tours*, 531 F.2d 224, 235 (5th Cir.1976) (Age Discrimination in Employment Act case). The BFOQ exception to the general rule prohibiting employment discrimination is narrowly construed. *Weeks v. Southern Bell Tel. & Tel.*, 408 F.2d 228, 232 (5th Cir.1969).

■ The Plaintiff does not question that employees at the Turkey Point plant should be respirator-qualified as per Nuclear Regulatory Commission requirements if their job so requires. 10 C.F.R. § 20.-103(c)(2) (1984).

Defendant, however, has not produced any evidence in support of a factual determination that substantially all persons with a diagnosis of, history of, or treatment for epilepsy would be unable to safely and efficiently perform the job. Plaintiff has provided evidence showing that not all persons with epilepsy have seizures. For those who do have seizures, there are legitimate medical bases for informed prognostications about the recurrence of seizures. Factors to be considered include patient's individual history, whether the patient is well-controlled and compliant with the proper medication, what form of epilepsy

or seizure disorder the patient has, and so forth.

Bechtel has not offered any evidence showing that it is impossible, or impractical to make employment determinations on an individualized basis. Plaintiff, on the other hand, has offered evidence tending to show that individualized assessments of risk are medically feasible. In addition, Plaintiff has shown, from the testimony of the treating physician, that it is desirable for the company physician to confirm the employee's medical history, to request medical records or order additional testing, to confer with the employee's treating physician, or to retain an independent specialist. See also *Rateau*, supra.

Bechtel has not adduced any evidence that it is impossible or impractical to make an individualized assessment of an employee's risk of on-the-job seizure.

Bechtel has not made the requisite showing to establish a BFOQ, and its motion for summary judgment on that point is DENIED.

## VII. Reasonable Accommodation.

■ The Florida Human Rights Act imposes a reasonable accommodation requirement upon an employer. *Krajnik v. Dade County Public Schools*, 4 Fla.Admin.L. Rep. 2123–A, 2124–A (1982); *Bisbee v. Thatcher Glass Mfg. Co.*, supra; *Michael v. Doctor's Hospital*, 2 Fla.Admin.L.Rep. 1148–A, 1149–A (1980).

The Court finds that there is a substantial material question of fact whether Defendant was able to comply with the Human Rights Act's reasonable accommodation requirement. Plaintiff has shown that another employee disqualified from respirator work was nonetheless employed elsewhere. Defendant characterizes this as mere inadvertency, not accommodation. Nevertheless, under the standards of Fed. R.Civ.P. 56, Defendant's Motion for Summary Judgment on the reasonable accommodation issue is DENIED as there is a genuine factual dispute as to whether Defendant has reasonably accommodated oth-

er employees who have been determined unqualified for unrestricted respirator use.

IT IS ORDERED AND ADJUDGED that the above is hereby made the order of this Court.