633 So.2d 504 (1994)
James A. BRAND, Appellant,
v.
FLORIDA POWER CORPORATION, Appellee.
No. 92-779.
District Court of Appeal of Florida, First District.
March 7, 1994.
*506 John Barry Kelly II of Ray, Kievit & Kelly, Pensacola, for appellant.
J. Lewis Sapp of Elarbee, Thompson & Trapnell, Atlanta, GA, Charles Reischmann, Florida Power Corp., St. Petersburg, for appellee.
ERVIN, Judge.
James A. Brand appeals from a final order of the Florida Commission on Human Relations dismissing his complaint against appellee, Florida Power Corporation, in which he alleged employment discrimination based on handicap. Although Brand raises eight issues, we deem the critical question before us is whether the Commission erred in determining that Brand failed to satisfy his ultimate burden of persuasion proving handicap discrimination. Because we conclude that there is competent, substantial evidence supporting the Commission's order, we affirm.
This case was initiated on October 3, 1989, when Brand filed a charge of discrimination under Florida's Human Rights Act of 1977[1] against Florida Power, alleging that Florida Power would not reemploy him as a certified welder mechanic because of his physical handicap (asbestosis), even though he was then fully qualified and able to perform the job.[2] Following an investigation, the Commission issued a "no cause" determination. Brand petitioned for relief, and the matter proceeded to hearing, resulting in an order by a hearing officer recommending that the Commission enter a final order dismissing *507 Brand's complaint. The hearing officer concluded that although Brand had established a prima facie case of unlawful employment discrimination based on handicap, Florida Power substantiated a legitimate, nondiscriminatory reason for its actions, which rebutted the inference of discrimination, and that Brand failed to show that Florida Power's reason was a pretext for discrimination. The Commission adopted the recommended order and issued a final order dismissing Brand's complaint with prejudice.
In reaching their determinations that Florida Power did not unlawfully discriminate against Brand, both the hearing officer and the Commission relied upon the United States Supreme Court's analysis applied in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (McDonnell Douglas-Burdine). This analysis, used generally to test discrimination claims under Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e-2000e-17), operates in the following fashion: First, the plaintiff has the burden of establishing by a preponderance of the evidence a prima facie case of unlawful discrimination. If the plaintiff succeeds, a presumption of discrimination arises and the burden shifts to the defendant-employer to produce evidence articulating a legitimate, nondiscriminatory reason for its action. The burden of producing evidence is next placed on the plaintiff to demonstrate that the defendant's proffered reason was not the true reason for the employment decision, but was in fact a pretext for discrimination. Whether or not the defendant satisfies its burden of production showing legitimate, nondiscriminatory reasons for the action taken is immaterial insofar as the ultimate burden of persuasion is concerned, which remains with the plaintiff. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. ___, ___, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407, 416 (1993); United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715-16, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403, 410-11 (1983).
The Commission's application of the McDonnell Douglas-Burdine test was in accord with Florida case law interpreting Florida's Human Rights Act, which, as this court has observed, is patterned after Title VII. See Florida Dep't of Community Affairs v. Bryant, 586 So.2d 1205, 1209 (Fla. 1st DCA 1991); School Bd. of Leon County v. Hargis, 400 So.2d 103, 108 n. 2 (Fla. 1st DCA 1981). In the federal sector, however, a Title VII analysis is not altogether applicable to a discrimination claim based on handicap. Moreover, no state court has as yet decided whether the test applies to a claim asserting handicap discrimination under Florida's Human Rights Act.
The remainder of this opinion is divided into three parts: in the first we discuss why the McDonnell Douglas-Burdine criteria are inapplicable to an employment handicap discrimination case in which the employer admits, as here, that it rejected the employee or applicant solely because of his or her handicap; in the second portion we adopt the federal rule recognizing that if the rejection is so based, the preferred criteria to be applied are those of section 504 of the federal Rehabilitation Act of 1973 (29 U.S.C. §§ 701-796i); the third portion is divided into two subparts, the first involving the application of section 504's criteria to the case at bar; and the second, the application of the competent, substantial evidence standard of review to the facts.

I.
No reference is made in 42 U.S.C. § 2000e-2 to any proscribed employment discrimination on account of a person's handicap.[3] Instead, federal handicap discrimination claims have generally been prosecuted pursuant to either section 501 or 504 of Title V of the Rehabilitation Act of 1973 (29 U.S.C. §§ 791, 794). The latter statute provides:

*508 No otherwise qualified individual with handicaps[[4]] in the United States, as defined in section 7(8) [29 U.S.C.S. § 706(8)], shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.
29 U.S.C.S. § 794(a) (Law.Co-op. 1990). Section 501 places a similar duty upon each department, agency, and instrumentality in the federal executive branch to refrain from handicap discrimination and mandates such employers to prepare affirmative action plans for the hiring, placement, and advancement of individuals with handicaps. 29 U.S.C. § 791(b).
Because there are different substantive factors that must be taken into account under the Rehabilitation Act, federal courts have stated that sections 501 and 504 establish their own criteria; hence, the analysis applicable to Title VII claims may not necessarily be relevant to actions based on handicap. See, e.g., Barth v. Gelb, 2 F.3d 1180, 1183-87 (D.C. Cir.1993), petition for cert. filed, 62 U.S.L.W. 3454 (U.S. Dec. 27, 1993) (No. 93-1023); Pushkin v. Regents of Univ. of Colo., 658 F.2d 1372, 1384-85 (10th Cir.1981). Consequently, the federal courts frequently modify the McDonnell Douglas-Burdine test in handicap discrimination cases, particularly in situations wherein the employer admits that the plaintiff's handicap was the sole reason for rejection. See Barth, 2 F.3d at 1187 (trial court erred in invoking Burdine three-step test once employer admitted it had denied job application on account of plaintiff's handicap).[5]
As observed in Pushkin, handicap discrimination cases are unique in that handicapped persons are invariably denied employment solely as a result of their handicaps; whereas in Title VII cases a characteristic such as race or sex is rarely admitted as motivating the employer's decision. Consequently, it is ordinarily unnecessary for a plaintiff to show the existence of a hostile, discriminatory purpose, or that the employer's given reasons were a pretext for an impermissible motive. "Discrimination on the basis of handicap usually results from more invidious causative elements and often occurs under the guise of extending a helping hand or a mistaken, restrictive belief as to the limitations of handicapped persons." Pushkin, 658 F.2d at 1385. As observed in Anderson v. University of Wisconsin, 841 F.2d 737, 741 (7th Cir.1988) (citation omitted): "Just as Title VII of the Civil Rights Act of 1964 ensures only equal treatment and not `correct' decisions, so the Rehabilitation Act requires only a stereotype-free assessment of the person's abilities and prospects rather than a correct decision." In other words, the Rehabilitation Act was structured for the purpose of replacing "reflexive reactions to actual or perceived handicaps with actions based on reasoned and medically sound judgments[.]" School Bd. of Nassau County, Fla. v. Arline, 480 U.S. 273, 284-85, 107 S.Ct. 1123, 1129, 94 L.Ed.2d 307, 319 (1987). Accordingly, good faith or a lack of discriminatory intent is not necessarily an appropriate consideration in actions brought under section 504. See Alexander v. Choate, 469 U.S. 287, 294-301, 105 S.Ct. 712, 716-20, 83 L.Ed.2d 661, 667-72 (1985); Norcross v. Sneed, 755 F.2d 113, 117 n. 4 (8th Cir.1985).
Thus, the ultimate test to be satisfied in a handicap discrimination claim brought under either section 501 or 504 is *509 not whether the employer's rejection of an employee stemmed from a discriminatory purpose, but whether the handicapped person who meets all the employment criteria except for the challenged discriminatory criterion "can perform the essential functions of the position in question without endangering the health and safety of the individual or others." 29 C.F.R. § 1613.702(f) (1993).[6] As observed in Chiari v. City of League City, 920 F.2d 311, 317 (5th Cir.1991): "[U]nder section 504, an individual is not qualified for a job if there is a genuine substantial risk that he or she could be injured or could injure others, and the employer cannot modify the job to eliminate that risk."

II.
In the case at bar, because Florida Power rejected Mr. Brand's employment application for no reason other than his handicap and defended its action on the primary ground that Brand was not a qualified handicapped person who was able to perform the requisite functions of the position with reasonable accommodation, we conclude that the McDonnell Douglas-Burdine criteria are inapplicable, and that the preferred criteria are those listed under section 504 of the Rehabilitation Act.[7] Moreover, in our judgment, certain of the criteria in section 504 are reasonably implied under Florida's Human Rights Act. For example, Section 760.10(1)(a), Florida Statutes, prohibits, as does section 504, an employer from "discharg[ing] or ... fail[ing] or refus[ing] to hire any individual, or otherwise ... discriminat[ing] against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's ... handicap[.]" Section 760.10(8)(a) continues, however, that it is not an unlawful employment practice for an employer to "[t]ake or fail to take any action on the basis of ... handicap" in instances in which such condition is "a bona fide occupational qualification reasonably necessary for the performance of the particular employment to which such action or inaction is related." Section 504 similarly implies, by the use of the language "otherwise qualified," that an employer may rely on the defense of a bona fide occupational qualification in a handicap discrimination claim if the plaintiff is not shown to be qualified for the position in question.
Accordingly, because of the similarity in the provisions of the two acts, we follow the instruction of numerous state decisions, recognizing that if a Florida statute is modeled after a federal law on the same subject, the Florida statute will take on the same construction as placed on its federal prototype, insofar as such interpretation is harmonious with the spirit and policy of the Florida legislation. See, e.g., Kidd v. City of Jacksonville, 97 Fla. 297, 304, 120 So. 556, 559 (1929); Department of Envtl. Reg. v. SCM Glidco Organics Corp., 606 So.2d 722, 725 (Fla. 1st DCA 1992); Department of Professional Reg., Div. of Real Estate v. Toledo Realty, Inc., 549 So.2d 715, 717 (Fla. 1st DCA 1989); Pasco County Sch. Bd. v. Florida Pub. Employees Relations Comm'n, 353 So.2d 108, 116 (Fla. 1st DCA 1977). For the above reasons, we look to section 504, pertinent regulations implementing the Rehabilitation Act and federal case law interpreting the statute for guidance in ascertaining the merits of appellant's handicap discrimination *510 claim.[8]
The criteria established by section 504 place the burden on a plaintiff to establish a prima facie case of employment discrimination by showing (1) that he or she is a handicapped individual under the act; (2) that he or she is otherwise qualified for the position sought or hired; (3) that he or she was excluded from the position sought solely by reason of his or her handicap; and (4) that the program or activity in question receives federal financial assistance. See Harris v. Thigpen, 941 F.2d 1495, 1522 (11th Cir.1991); Rosiak v. United States Dep't of the Army, 679 F. Supp. 444, 449-50 (M.D.Pa. 1987); Dexler v. Tisch, 660 F. Supp. 1418, 1427 (D.Conn. 1987). Obviously, the fourth criterion is inapplicable to a claim brought pursuant to Florida's Human Rights Act.[9]
In considering the merits of handicap discrimination claims, the federal courts have modified the McDonnell Douglas-Burdine analysis applicable to Title VII claims and, while retaining the analysis's basic allocation of burden-shifting, have adopted the criteria that are uniquely pertinent to actions brought under sections 501 or 504, resulting in the following analysis. First, a plaintiff is considered to have established a prima facie case of handicap discrimination if such person can make a facial showing that he or she is a handicapped person under the Act,[10] is qualified for the position apart from his or her handicap,[11] and was denied the job solely because of the handicap. Doe v. New York Univ., 666 F.2d 761, 776 (2d Cir.1981).
If the plaintiff is unable to make a prima facie case of handicap discrimination, the *511 burden of producing rebuttal evidence does not shift to the employer, and judgment is invariably entered in favor of the employer. For example, in Lucero v. Hart, 915 F.2d 1367 (9th Cir.1990), an emotionally handicapped employee was not considered an otherwise qualified handicapped individual for purposes of the Rehabilitation Act, because she could not perform the essential functions of the clerk-typist position in question, i.e., type the required 45 words per minute. Under such circumstances, the court concluded that the employee had failed to establish a prima facie case of handicap discrimination, and it was unnecessary to reach the issue of whether the employer had made reasonable attempts to accommodate her.[12]
If a prima facie case is established, the burden of producing evidence is then placed on the employer to show that its consideration of the handicap was relevant to the qualifications of the position sought. Doe v. New York Univ., 666 F.2d 761, 776 (2d Cir.1981). Federal courts frequently consult the following regulation of the Equal Employment Opportunity Commission in deciding whether an employer complied with its burden of reasonable accommodation:
(a) An agency shall make reasonable accommodation to the known physical or mental limitations of a qualified handicapped applicant or employee unless the agency can demonstrate that the accommodation would impose an undue hardship on the operation of its program.
(b) Reasonable accommodation may include, but shall not be limited to: (1) Making facilities readily accessible to and usable by handicapped persons, and (2) job restructuring, part-time or modified work schedules, acquisition or modification of equipment or devices, appropriate adjustment or modification of examinations, the provision of readers and interpreters, and other similar actions.
(c) In determining pursuant to paragraph (a) of this section whether an accommodation would impose an undue hardship on the operation of the agency in question, factors to be considered include: (1) The overall size of the agency's program with respect to the number of employees, number and type of facilities and size of budget; (2) the type of agency operation, including the composition and structure of the agency's work force; and (3) the nature and the cost of the accommodation.
29 C.F.R. § 1613.704 (1993).[13]
Thus, as is apparent from the above regulations, the employer may meet its burden by showing (1) that the plaintiff's handicap is such that it simply cannot possibly be accommodated,[14] or (2) if the handicap *512 is such that accommodation is possible, the proposed accommodation is unreasonable because it would result in an undue hardship on the defendant's activities. See Barth v. Gelb, 2 F.3d 1180, 1187-88 (D.C. Cir.1993), petition for cert. filed, 62 U.S.L.W. 3454 (U.S. Dec. 27, 1993) (No. 93-1023). For example, the defendant is not required to make fundamental alterations in its program. See Alexander v. Choate, 469 U.S. 287, 300, 105 S.Ct. 712, 719-20, 83 L.Ed.2d 661, 671 (1985). Nor is it required to create a new job for the plaintiff. See School Bd. of Nassau County, Fla. v. Arline, 480 U.S. 273, 289 n. 19, 107 S.Ct. 1123, 1131 n. 19, 94 L.Ed.2d 307, 321 n. 19 (1987).
Once the defendant places into evidence valid reasons for the rejection, the plaintiff cannot remain silent, but must rebut the employer's position with evidence concerning his or her individual capabilities "and suggestions for possible accommodations." Treadwell v. Alexander, 707 F.2d 473, 478 (11th Cir.1983). Accord Prewitt v. United States Postal Serv., 662 F.2d 292, 308 (5th Cir.1981). Moreover, the fact that a "`defendant could have provided a different set of reasonable accommodations or more accommodations does not establish that the accommodations provided were unreasonable or that additional accommodations were necessary.'" Pandazides v. Virginia Bd. of Educ., 804 F. Supp. 794, 802 (E.D.Va. 1992) (quoting Wynne v. Tufts Univ. Sch. of Medicine, No. 88-1105-7, 1992 WL 46077, 1992 U.S.Dist. Lexis 2629 (D.Mass Mar. 2, 1992)).
The burden of persuasion on the ultimate issue of whether a handicapped person who meets all of the employment criteria except for the alleged discriminatory criterion "can perform the essential functions of the position in question without endangering the health and safety of the individual or others" remains with the plaintiff for the simple reason that a presumption (i.e., the presumption of discrimination arising from plaintiff's satisfaction of a prima facie case) cannot shift the burden of proof. Cf. St. Mary's Honor Ctr. v. Hicks, 509 U.S. ___, ___, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407, 419 (1993). See also Doe v. New York Univ., 666 F.2d 761, 776-777 (2d Cir.1981) ("The plaintiff ... bear[s] the ultimate burden of showing by a preponderance of the evidence that in spite of the handicap, he is qualified[.]").

III.

A.
In applying the criteria of section 504 to the instant case, we note, as previously stated, that Florida Power has made no contention that it excluded Brand from employment for any reason other than his handicap. Brand's condition, asbestosis, qualifies as a handicap under both the Commission's policy determinations, Green v. Mark III Industries, 12 F.A.L.R. 1888, 1894 (Fla.Comm'n Human Relations 1990), and the regulations of the Equal Employment Opportunity Commission, defining "physical or mental impairment" to include "any physiological condition ... or anatomical loss affecting one or more of the following body systems: Neurological; musculoskeletal; special sense organs; cardiovascular; reproductive; digestive." 29 C.F.R. § 1613.702(b) (1993). See also Fynes v. Weinberger, 677 F. Supp. 315, 321 (E.D.Pa. 1985) (referring to federal regulations in deciding that plaintiff's condition, asbestosis, complied with the definition of handicap). Moreover, Florida Power has conceded that Brand established a prima facie case of handicap discrimination. Consequently, the burden of producing evidence was placed on Florida Power to rebut Brand's prima facie case of handicap discrimination by showing that its rejection of Brand's application due to his handicap was relevant to the qualifications of the position which he sought, i.e., that he could not perform the essential functions required for the position either with or without reasonable accommodation.
The reasons Florida Power offered for refusing to hire Brand were not that it was unable to provide him with any reasonable accommodations because of undue hardship to its operations, but were rather that his medical restrictions made it impossible for him to perform safely the tasks of the position for which he applied, and that there were no openings for the only job he could have performed consistent with his medical restrictions. For instance, Dr. Rubin, *513 Brand's physician, supplied information showing that Brand had pulmonary asbestosis; that he was at risk for the progression of the disease; and that he should not be exposed to noxious fumes, gases or other environmental irritants. Although Dr. Kline, Florida Power's Director of Health Services, did not examine Brand, he reviewed all the available medical information and concluded that Dr. Rubin's restrictions were reasonable. Carey Hamilton, the supervisor responsible for hiring the members of the service maintenance crew, testified that over the course of his 15 years' experience at Florida Power he had worked as a certified welder mechanic in those areas of the plant where Brand ordinarily would perform his assignments. He stated that the job required such employees to work in dirty, dusty areas, and, as a result, the employees would be continually exposed to various noxious fumes, gases and environmental irritants. Hamilton concluded by saying that the only position he had available to accommodate a person with Brand's medical limitations was in the tool room, where there were no openings.
Based on the foregoing evidence, the hearing officer decided that Florida Power had presented legitimate, nondiscriminatory reasons for refusing to employ Brand, which rebutted his prima facie case of handicap discrimination. The burden then shifted to Brand to produce evidence showing his individual capabilities and suggestions for further accommodations. Prewitt v. United States Postal Serv., 662 F.2d 292, 308 (5th Cir.1981). The hearing officer concluded he did not and recommended that the complaint be dismissed, which it was. Our task is to determine whether the findings entered are supported by competent, substantial evidence.

B.
In reviewing factual findings in employment discrimination cases, as in all civil cases generally tried before the court without a jury or with an advisory jury, federal courts are bound by the review standard of Federal Rule of Civil Procedure 52(a), which provides that findings of fact shall not be set aside unless clearly erroneous. Thus, an appellate court is permitted to reverse a finding under the clearly-erroneous standard, notwithstanding the fact that there may be evidence to support it, if "the ... court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, 766 (1948).
This court's review standard over the findings entered below is even more limited than that permitted by the clearly erroneous standard, because the applicable standard in this jurisdiction is one of competent, substantial evidence. As stated by the Florida Supreme Court in Shaw v. Shaw, 334 So.2d 13, 16 (Fla. 1976): "It is not the function of the appellate court to substitute its judgment for that of the trial court through re-evaluation of the testimony and evidence from the record on appeal before it. The test ... is whether the judgment of the trial court is supported by competent evidence."
In applying the above standard to the facts at bar, we conclude that affirmance is required. As previously noted, the employer presented evidence, found to be credible by the factfinder, that Florida Power could not reasonably accommodate Brand's handicap. On appeal, Brand challenges the substantiality of this evidence, arguing that Florida Power was in possession of his medical records, including his pulmonary function tests, which were within normal limits, was aware that it had paper masks and respirators at its various work sites, and that it had made such equipment available to employees during times when the work environment required such use. As a consequence, it was required, once Brand established a prima facie case of handicap discrimination, to gather all pertinent information regarding his disabling condition and to explore all possible means of accommodation. Specifically, Brand asserts that Florida Power should have, among other things, done the following: (1) provided him with the use of a paper mask or respirator in those areas of the plant where he could be exposed to noxious irritants, if necessary; (2) conducted an individual physical examination of him before its medical director imposed physical restrictions *514 upon him; (3) made a reasonable determination of any risk to him or others as a result of his condition; (4) ordered diagnostic tests which could have provided more extensive information to Florida Power concerning his condition and the nature of his impairment.
The difficulty with Brand's argument is that he made no specific suggestion below that his condition could be accommodated by the use of a respirator or paper mask; nor is there anything in his own physician's report, or, for that matter, of any other physician, indicating that his condition could be safely accommodated by furnishing him with such equipment. It is obvious that matters not presented in evidence during trial cannot be considered for the first time on appeal. Cf. Gilbert v. Frank, 949 F.2d 637, 640 (2d Cir.1991) (appellate court declined to entertain the issue of whether plaintiff-appellant qualified as an individual with handicaps as defined in 29 U.S.C. § 706(8)(B), which provides, among other things, that he have a record of an impairment that limited his major life activities, because the issue was not presented for consideration before the trial court).
Moreover, in advancing these arguments, Brand relies substantially upon a published order of the federal district court in Kelley v. Bechtel Power Corp., 633 F. Supp. 927 (S.D.Fla. 1986), involving an action brought under Florida's Human Rights Act alleging handicap discrimination. In granting relief to the employee, the court observed that the employer, through its physician,
did not make an individualized determination that Plaintiff presented a substantial risk of having a seizure on the job. The company physician charged with the ultimate decision as to Plaintiff's qualifications never examined the Plaintiff, never requested the medical records of the Plaintiff, never ordered any neurological testing or other testing designed around the conditions of the job, and did not endeavor to communicate with the Plaintiff's treating physician, located in the same city, to clarify any questions the company physician may have had.
Id. at 933-34.
In so ruling, the court explicitly relied upon Mantolete v. Bolger, 767 F.2d 1416, 1422-23 (9th Cir.1985), which had held that before the handicapped individual could be excluded from employment on the basis of possible future injury, the employer must first make a showing of the existence of a reasonable probability of substantial harm, and, in order to make such showing, the employer was required to conduct an evaluation, which included an examination of the individual's work and medical histories. The Ninth Circuit pointed out that an objective evaluation would prevent employers from refusing to give needed opportunities to handicapped persons on the basis of misinformed stereotypes. It concluded that "an employer has a duty under the Act to gather sufficient information from the applicant and from qualified experts as needed to determine what accommodations are necessary to enable the applicant to perform the job safely... . After marshaling the facts, the employer must make a decision as to the reasonableness of accommodation, in light of the factors enunciated in 29 C.F.R. § 1613.704(c)." Id. at 1423.
The evidence at bar clearly discloses that Florida Power did not comply with the information-gathering directive imposed by Mantolete. Nevertheless, we are of the opinion that the rule stated in Mantolete and reaffirmed in Kelley is inapplicable to the instant case. Mantolete involved a handicap-discrimination action brought pursuant to section 501 of the Rehabilitation Act  a distinguishing fact not mentioned in Kelley.[15] Section 501  unlike section 504  contains an affirmative action provision. Indeed, the provisions of section 501 clearly appear to have motivated the Mantolete decision. As noted in Mantolete, the court's requirement that federal employers obtain sufficient information to determine whether a handicapped individual could safely perform the essentials of the position, was justified in light of the *515 express language of section 501 and its implementing regulations, but it was questionable whether such requirement was applicable to employers under section 504. Id. at 1425 (Rafeedie, J., concurring).
In our judgment, Brand erroneously places upon the employer the obligation of information-gathering and exploration of all reasonable accommodations once he established a prima facie case of handicap discrimination. We are of the view that neither Florida's Human Rights Act, nor section 504, incorporated therein, places an affirmative obligation upon an employer to so act. In so deciding, we are not unaware that a number of federal courts have stated that after a plaintiff satisfies his or her prima facie case, the "ultimate burden of persuasion" in showing an inability to accommodate shifts to the employer. See Treadwell v. Alexander, 707 F.2d 473, 478 (11th Cir.1983); Prewitt v. United States Postal Serv., 662 F.2d 292, 308 (5th Cir.1981); Fynes v. Weinberger, 677 F. Supp. 315, 321 (E.D.Pa. 1985). This language appears to be at variance with other language in the same opinions. For example, the Fifth Circuit in Prewitt, while embracing the above burden of persuasion terminology, otherwise states that once the employer presents evidence showing that accommodation is not possible, the plaintiff cannot then remain silent, and that the burden is then placed on the plaintiff to come forward with evidence concerning his or her individual capabilities and suggestions for possible accommodations.[16]Prewitt, 662 F.2d at 308.
In any event, to say that the ultimate burden of persuasion of proving inability to accommodate is placed on the employer appears to turn the McDonnell Douglas-Burdine allocation of burden-shifting on its head, which clearly states that the ultimate burden of persuasion remains with the plaintiff, once the employer has articulated reasons for the employment decision. Moreover, in view of the Supreme Court's observation that the presumption of discrimination raised by the plaintiff's establishment of a prima facie case does not shift the burden of proof, St. Mary's Honor Ctr. v. Hicks, 509 U.S. at ___, 113 S.Ct. at 2749, 125 L.Ed.2d at 419, the above pronouncements regarding the employer's ultimate burden of persuasion of proving reasonable accommodation should be reevaluated by those courts which have required it.
Even if we were to conclude that the reasons Florida Power gave for rejecting Brand's employment application were unreasonable, because they failed to take into account all possible accommodations for Brand's condition, our conclusion in such regard would not mandate reversal and remand of the case for entry of an order in favor of Brand. As the United States Supreme Court observed in St. Mary's, after a defendant has responded to a plaintiff's prima facie case, a trial court has before it all the evidence it needs to decide. Id. at ___, 113 S.Ct. at 2753, 125 L.Ed.2d at 424. Under such posture, it is not enough for the trial court to disbelieve the employer; the factfinder must also believe the plaintiff's explanation of discrimination. Id.
As no evidence was presented below disclosing that Brand could safely perform the position sought within the restrictions imposed upon him by his own physician, the hearing officer and the Commission could properly find that Brand had failed to satisfy his ultimate burden of persuasion requiring him to show that he was able to perform the essential functions of the job in question without endangering himself. Because competent, substantial evidence supports this finding, the order of dismissal is
AFFIRMED.
LAWRENCE, J., and SHIVERS, Senior Judge, concur.
NOTES
[1] §§ 760.01-.10, Fla. Stat. (1989).
[2] Brand had been employed by Florida Power at various times since 1985 as a temporary employee in the position of certified welder mechanic on the service maintenance crew. In early 1989, after being contacted by Florida Power regarding reemployment during an upcoming plant outage, he updated his records and provided Florida Power with a letter from his attorney and a clinical evaluation prepared by his physician, indicating that Brand had asbestos-related lung disorders, i.e., pulmonary asbestosis.
[3] Section 2000e-2(a)(1) provides that it is an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."
[4] The statute has since been amended to read "individual with a disability." 29 U.S.C.S. § 794(a) (Law.Co-op.Supp. 1993).
[5] Barth identifies three classes of cases arising under the Rehabilitation Act: First, one in which the employer contends the employment decision was made for reasons unrelated to the person's handicap; second, one wherein the employer contests the plaintiff's claim that he or she is a qualified handicapped person who, with reasonable accommodation, can perform the essential functions of the job in question (as indicated infra, Brand's case falls within this category); and third, one in which the employer asserts it is unable to provide the accommodation necessary, because it would impose an undue hardship on its operations. Only the first category is subject to the Burdine analysis; the Rehabilitation Act's own criteria apply to the last two classes of cases. Barth, 2 F.3d at 1186-87.
[6] The quoted provision is from the definition of "qualified handicapped person" in the regulations adopted by the Equal Employment Opportunity Commission. The federal courts frequently resort to the regulations approved by the Department of Health and Human Services and the Equal Employment Opportunity Commission in determining whether one can be considered handicapped. See Prewitt v. United States Postal Serv., 662 F.2d 292, 306 (5th Cir.1981). In fact, the United States Supreme Court has characterized the regulations as "an important source of guidance on the meaning of section 504." Alexander v. Choate, 469 U.S. 287, 304 n. 24, 105 S.Ct. 712, 722 n. 24, 83 L.Ed.2d 661, 674 n. 24 (1985).
[7] Section 501 (29 U.S.C. § 791) is not an appropriate model for actions prosecuted under the Florida Human Rights Act, because the Florida act does not require affirmative action by employers as a means of countering handicap discrimination against employees. Because of this obligation, section 501 places a greater burden on employers than does section 504. See Chiari v. City of League City, 920 F.2d 311, 317 (5th Cir.1991).
[8] Due to its recent enactment, we do not comment on what effect the Americans with Disabilities Act of 1990 (ADA) (42 U.S.C. §§ 12101-12213) may have on handicap discrimination claims prosecuted pursuant to Florida's Human Rights Act, but it appears from our examination of certain key provisions in the ADA paralleling section 504 that Congress intended to extend protections against handicap discrimination equal to or greater than that provided by section 504 to qualified individuals with handicaps. Hence, we are of the view that case law interpreting section 504 is highly persuasive authority in actions brought under the ADA to the extent that the provisions in the two acts coincide.
[9] The Human Relations Commission has substantially adopted the first three criteria in its interpretation of Florida's Human Rights Act. See Cabany v. Hollywood Memorial Hosp., 12 F.A.L.R. 2020, 2027 (Fla. Comm'n Human Relations 1990).
[10] Section 504 specifically refers to 29 U.S.C. § 706(8)(B) for the definition thereof. The latter defines an "individual with handicaps," subject to certain exceptions not applicable to this case, as one "who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." Examples of major life activities include caring for oneself, walking, seeing, speaking, breathing, learning, and working. 29 C.F.R. § 1630.2(i) (1993).

Because we have adopted section 504's definition of handicap, as applied to a claim asserting handicap discrimination brought under Florida's Human Rights Act, we feel compelled to note our disagreement with Kelley v. Bechtel Power Corp., 633 F. Supp. 927, 931 (S.D.Fla. 1986), which considered that the Human Relations Commission had not accepted the federal definition. On the contrary, the very language of the Commission in Bisbee v. Thatcher Glass Manufacturing Co., 3 F.A.L.R. 892-A, 893-A (Fla. Comm'n Human Relations 1981), supports the opposite view in that, as noted in Kelley, the Commission's definition of handicap, stated therein, "tracks the definition of `handicapped individual' in 29 U.S.C. § 706(7)(B)." Kelley, 633 F. Supp. at 931. Although the hearing officer below, in concluding that Brand had established a prima facie case of handicap discrimination, relied upon the Commission's definition of handicap in Green v. Mark III Industries, 12 F.A.L.R. 1888, 1894 (Fla. Comm'n Human Relations 1990) (quoting Thomas v. Floridin Co., 8 F.A.L.R. 5457 (Fla. Comm'n Human Relations 1986)), stating that "`a person with a handicap does not enjoy in some measure the full and normal use of his sensory, mental or physical faculties,'" we are of the view that this definition generally parallels that provided in the federal statute, and, therefore, the Commission's orders are not inconsistent with the Rehabilitation Act's definition of handicap.
[11] This showing turns on the question of whether the person can be considered otherwise qualified for the position sought. In Southeastern Community College v. Davis, 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980, 988 (1979), the Supreme Court noted that the term "otherwise qualified handicapped individual" is one who is able to meet all of a program's requirements in spite of handicap. In other words, the individual must be qualified in all respects for the job in question except for his or her handicap. Moreover, handicapped persons who either with or without reasonable accommodations are able to perform the essential functions of the job applied for have been considered qualified under the act.
[12] It should be noted that Florida's Human Rights Act does not contain any explicit provision regarding an employer's duty to attempt reasonable accommodations for an employee's or applicant's handicap. Nevertheless, such duty can be reasonably implied from various statutory provisions. In pronouncing the general purposes of the act, the legislature has broadly stated that it was designed "to secure for all individuals within the state freedom from discrimination because of race, color, religion, sex, national origin, age, handicap, or marital status and ... to make available to the state their full productive capacities." § 760.01(2) Fla. Stat. (1989). Indeed, the Florida Constitution, in defining an individual's basic rights, explicitly prohibits the deprivation "of any right because of race, religion or physical handicap." Art. I, § 2, Fla. Const. In fact, the Commission in the case below and in other cases has imposed on employers a reasonable accommodation requirement. See Krajnik v. Dade County Public Schools, 4 F.A.L.R. 2123-A, 2124-A (Fla. Comm'n Human Relations 1982). Moreover, other state courts, while noting that their handicap discrimination statutes contain no specific accommodation provision, nevertheless observe that the duty of the employer to make reasonable accommodation can be implied from the purpose of the statute itself. See Cerro Gordo County Care Facility v. Iowa Civil Rights Comm'n, 401 N.W.2d 192 (Iowa 1987); Jenks v. Avco Corp., 340 Pa.Super. 542, 490 A.2d 912 (1985).
[13] Although this regulation was specifically adopted to implement section 501 of the Rehabilitation Act, the federal courts often apply the regulations to actions brought under either sections 501 and 504.
[14] Evidence of this type goes to the issue of whether the plaintiff can be considered otherwise qualified for the position sought. The answer involves a two-part inquiry. First, the factfinder must decide whether the plaintiff could perform the essential functions of the job, and second, if he or she cannot do so, whether, with any reasonable accommodation furnished by the defendant, the plaintiff would be enabled to do so. Chiari v. City of League City, 920 F.2d 311, 315 (5th Cir.1991).
[15] Although we disagree with Kelley's allocations of burden, we agree with its result, i.e., that the court could properly find that plaintiff has satisfactorily established that he could perform the essential functions of the position in question without endangering himself, based on facts showing that despite his diagnosed condition of epilepsy, which was controlled by medication, he had never suffered a seizure and had always been able to perform the duties assigned him.
[16] Indeed, the Fifth Circuit appears to have later receded from the language imposing the burden on the employer to show inability to accommodate, sub silentio. In Chiari v. City of League City, 920 F.2d 311, 315 (5th Cir.1991), the court stated that to qualify for relief under section 504, the plaintiff must prove he or she (1) was an individual with handicaps, (2) was otherwise qualified, (3) worked for a program or activity which received federal assistance, and (4) was adversely treated solely because of his or her handicap.