**Ross J. FOURAKER, Plaintiff,**

v.

**PUBLIX SUPER MARKETS, INC., Defendant.**

No. 96–112–CIV–ORL–18.

United States District Court, M.D. Florida.

April 3, 1997.

Patricia R. Sigman, Sigman & Sigman, P.A., Altamonte Springs, for plaintiff.

Robert David Hall, Jr., John–Edward Alley, Alley and Alley/Ford & Harrison, Tampa, David S. Shankman, Newman, Levine, Metzler & Shankman, P.A., Tampa, for defendant.

## ORDER

G. KENDALL SHARP, District Judge.

Plaintiff Ross J. Fouraker (Fouraker) brings this instant action against defendant Publix Super Market, Inc. (Publix) for alleged unlawful termination from his employment based upon his disability or handicap in violation of the Americans With Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, (1994) (ADA), as well as the Florida Civil Rights Act, Florida Statute chapter 760.10 (1995) (FCRA). In his amended complaint, plaintiff seeks injunctive relief, reinstatement of his former position, back and forward pay, compensatory and punitive damages along with costs and attorneys' fees. The case is presently before the court on defendant's motion for summary judgment, to which the plaintiff has responded in opposition. Following a review of the case file and relevant law, the court finds that defendant's motion should be granted.

### I. Findings of Fact

Fouraker was born on December 3, 1958, with cerebral palsy, an affliction he has lived with his entire life. He began working for Publix in March of 1978 during his senior year of high school at defendant's New Smyrna Beach, Florida, Store No. 191 as a front service person. As a front service person, Fouraker's duties included putting customers' groceries in bags at the cash register, transporting the groceries to the customers' cars, collecting shopping carts from the parking lot, picking up trash, crushing boxes, scanning damaged goods, performing price checks on merchandise and other similar functions throughout the store. (Doc. 18 at p. 2; Doc. 54, Fouraker Depo. at p. 13–14). After working at Store No. 191 for over nine years, plaintiff requested and received a transfer to Store No. 335, also located in New Smyrna Beach, Florida, in late 1987.

Fouraker's employment at Store No. 335 continued without incident until April of 1994 when the plaintiff requested permission to tape record a progress evaluation with the store manager David Hood (Hood). Hood, after conferring with corporate personnel, informed Fouraker that he should not use the recorder during their meeting. Almost a year later, in April of 1995, Store No. 335 changed its hours of operation and would open one hour later at 8:00 a.m. rather than 7:00 a.m. as it had previously. Prior to this change, Fouraker usually worked from 7:00

a.m. to 4:00 p.m. Monday through Friday, but with the store's new operating schedule, he was asked to alter his own work schedule and arrive at 7:30 or 8:00 a.m. and work until 4:30 or 5:00 p.m. Fouraker, while displeased with the new arrangement, told Hood on April 18, 1995 that he would "give it a try." (Doc. 18 at p. 8; Doc. 54, Fouraker Depo. at p. 63). The new employment schedule was posted the following day but Fouraker was unsatisfied and complained to Store No. 335's assistant manager Robert Dytkowski (Dytkowski). Early the next morning, on April 20, 1995, both Hood and Dytkowski talked with Fouraker in an attempt to appease his dissatisfaction over his new schedule but their efforts proved unsuccessful. Hood and Fouraker then decided to discuss the issue with Brett Sloan, Fouraker's previous manager and now a Publix District Manager. Sloan arrived at Store No. 335 later that day and met with both Fouraker and Hood to discuss Fouraker's complaint. During their meeting, Sloan noticed a tape recorder in Fouraker's pocket. Fouraker was asked if he was tape recording the conversation and he replied that he was not. Sloan then requested to inspect the tape recorder and Fouraker relinquished it to him. Sloan rewound the tape and listened to the conversation which Fouraker had with Hood and Dytkowski earlier that day. Sloan then informed Fouraker that he was suspended for one week effective immediately while the company considered what further action, if any, to take. On April 27, 1995, Hood, with the approval of Sloan, terminated Fouraker from employment for failing to comply with instructions from management personnel by recording unauthorized conversations. Plaintiff received his Right to Sue letter by the EEOC on or about January 12, 1996 and this lawsuit followed.

## II. Legal Discussion

### A. *Summary Judgment Standards*

Summary judgment is authorized if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202

(1986). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. at 2510.

The moving party bears the burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In determining whether the moving party has satisfied the burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14; *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). The moving party may rely solely on his pleadings to satisfy this burden. *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53; Fed.R.Civ.P. 56(c).

"[A]ll that is required [to proceed to trial] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510 (quoting *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968)). Summary judgment is mandated, however, "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

### B. *The Merits of Defendant's Motion*

In their present motion, the defendant requests the court to grant summary judgment in their favor as to Counts I and II of plaintiff's amended complaint. In Count I,

Fouraker claims that he was unlawfully discharged from his employment based upon his disability in violation of the Americans With Disabilities Act (ADA). Similarly, Count II alleges that plaintiff was unlawfully terminated from his employment based upon his handicap in violation of the Florida Civil Rights Act (FCRA). The court will address each of these counts in their respective order.

### 1) Count I—Fouraker's ADA Claim

In Count I of his amended complaint, Fouraker alleges that he was "disciplined and allegedly terminated for carrying and use of a tape recorder to record his manager's instructions so that he could replay and review such instructions, which plaintiff required because of his disability" in violation of the ADA. (Doc. 11, Am. Complaint at p. 3). Congress enacted the ADA in 1990 "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1) (1994). The ADA states that "[N]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (1994). Through the enactment of the ADA, Congress has imposed upon employers the duty to provide reasonable accommodations for known disabilities unless doing so would result in an undue hardship to the employer. 42 U.S.C. § 12112(b)(5)(A) (1995); *accord Gordon v. E.L. Hamm & Assoc. Inc.,* 100 F.3d 907, 910 (11th Cir.1996). The Act defines the term "disability" as "(a) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment." 42 U.S.C. § 12102(2) (1994). Additionally, Congress also defined a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8) (1994).

In order to establish a prima facie case of discrimination in violation of the ADA, a plaintiff must prove that (1) he/she has a disability; (2) he/she is a qualified individual; and (3) he/she was subjected to unlawful discrimination because of his/her disability. *See Gordon,* 100 F.3d at 910; *Pritchard v. Southern Co. Serv.,* 92 F.3d 1130, 1132 (11th Cir.1996); *Morisky v. Broward County,* 80 F.3d 445, 447 (11th Cir. 1996) (adopting the District court's judgment). In support of their motion for summary judgment, the defendant contends that plaintiff has failed to establish a prima facie case of discrimination by not satisfying any of the three elements in the above stated test. More specifically, the defendant contends that plaintiff does not suffer from a disability, is not a qualified individual under the Act, and was not subjected to unlawful discrimination as a result of his disability. Nevertheless, the court is convinced that Fouraker's cerebral palsy constitutes a recognized disability under the ADA in this instance and that his seventeen years of employment at Publix is evidence that he can perform the essential functions of his job and thus is a qualified individual under the Act. Satisfaction of the third prong however still remains in order for plaintiff to establish a prima facie case of discrimination under the ADA, namely, that he was subject to discrimination because of his disability. In an attempt to satisfy this burden, plaintiff argues that Publix discriminated against him by failing to accommodate his disability by not allowing him to use a tape recorder at work. The defendant on the other hand contends that plaintiff was terminated from employment as a result of insubordination and his failure to observe management directives, rather than because of his status as a disabled individual. The court will analyze both parties arguments addressing this issue.

In their motion for summary judgment and throughout the case file, Publix cites to numerous facts as evidence that they never discriminated against Fouraker and did not terminate his employment based upon his disability. First, Publix notes that it hired Fouraker in 1978 as a front service person knowing full well of his disability and his battle with cerebral palsy. Brett Sloan was

the store manager at Store No. 191 from 1981 until 1987 where Fouraker was first hired as a front service person in 1978. In 1987, Sloan transferred stores and became the store manager at Store No. 335, with Fouraker arriving at Store No. 335 later that year. Subsequently, Sloan became a District Manager but still maintained contact with Fouraker and had conversations with him during his visits to the No. 335 store. Similarly, David Hood first worked with Fouraker in 1978 at Store No. 191 where Hood was the front end coordinator with direct supervision over front service personnel of which Fouraker was a member. In 1990, Hood became the manager at Store No. 335 where Fouraker had previously transferred three years earlier and resumed his supervisory authority over Fouraker until his termination in April of 1995. The defendant argues that both Sloan and Hood awarded Fouraker equal if not preferential treatment during his employment at Publix and thus never discriminated against him on the basis of his disability.

For instance, the defendant notes that at the time of his termination, Fouraker was earning approximately $8.60 an hour while the maximum pay for a front service person was only $5.25 per hour. (Doc. 34, Sloan Aff. at p. 2–3). Beth Grove, a Human Resource Specialist who worked with Fouraker at Store No 335, also stated that while Publix employed over 20,000 front service personnel nationwide, Fouraker was one of less than 400 to acquire full-time employee status. (Doc. 25, Grove Aff. at p. 1; Doc. 26, Hood Aff. at p. 2).

Additionally, the defendant contends that Sloan and Hood were very accommodating to other Fouraker requests such as to transfer stores and maintaining a predictable work schedule. In 1987, after working at Store No. 191 for approximately nine years, Fouraker requested a transfer to Store No. 335 because it was located closer to his home and the commuter traffic would be lighter. His request was granted by then Store No. 335 manager Brett Sloan without any difficulty. (Doc. 34, Sloan Aff. at p. 3). Additionally, Fouraker's supervisors routinely obliged Fouraker with his scheduling requests by not requiring him to work nights and allowing him to have weekends off, both of which were highly unusual for the majority of Publix employees. (Doc. 26, Hood Aff. at p. 2; Doc. 29, Monday Aff. at p. 2)(stating that Fouraker had a much more favorable schedule than anyone else and that he was the only store employee that she knew of who had a full-time day shift with no weekend duties). Similarly, Hood also allowed Fouraker to leave work early to attend classes in an effort to improve his reading skills. (Doc. 54., Fouraker Depo. at p. 59–60).

Plaintiff meanwhile argues that defendant's denial of his use of his tape recorder in the workplace constituted a failure to accommodate his disability and thus resulted in unlawful discrimination in violation of the ADA. Fouraker contends that he began using the tape recorder sometime in 1992 or 1993 during his visits to the doctor's office to record the doctor's medical instructions to him. *Id.* at p. 47. To bolster his argument that he required the use of the recorder at work, Fouraker presented the testimony of his physician, Dr. John McCormick, who stated that "Ross has had problems with his memory and has difficulty keeping track of his responsibilities and obligations," and later suggested that Fouraker was taking a number of medications for seizure management which "may have produced symptoms that interfered with his ability to comprehend consistently." (Doc. 52 McCormick Aff., Exh. A at p. 1–2).

Following his doctor's visits, Fouraker claims that he began taking the tape recorder to work to record instructions from his supervisors in order to remember their suggestions and improve the quality of his work. (Doc. 54, Fouraker Depo. at p. 38). However, when Fouraker requested permission to use the tape recorder during a meeting with store manager Hood, Hood explained that while he did not have a problem with its use, the corporate office did not recommend its use. Fouraker claims that although Hood's instruction did not recommend its use, he believed that he was still authorized to use the tape recorder at work if he wished. *Id.* at p. 45–46.

Lastly, Fouraker cites to several EEOC guidelines to further support his claim. Fouraker notes that the guidelines state in perti-

nent part that "once a qualified individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation. [This is] best determined through a flexible, interactive process that involves both the employer and the qualified individual with a disability." Labor, 29 C.F.R. § 1630 App., p. 351 (1996). Additionally, Fouraker notes that reasonable accommodations means making "modifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities." Labor, 29 C.F.R. § 1630.2(*o*)(iii), p. 330 (1996). Thus, Fouraker argues that due to his decreased mental capacity coupled with his desire to succeed in the workplace, the use of his tape recorder was necessary to accurately retain management's instructions to him and when Publix turned down his request, it constituted a failure to accommodate his disability and thus violated the ADA.

The defendant counters however that Fouraker had no problem remembering instructions given to him by his supervisors, knew that he was not supposed to bring the device to work and that his failure to comply with company directives was proper grounds for dismissal. Both Sloan and Hood stated that Fouraker was a good employee who did not require a lot of instructions in order to carry out his employment duties. (Doc. 34, Sloan Aff. at p. 2)(stating that Fouraker did not require any more instruction than any other employee); (Doc. 26, Hood Aff. at p. 2)(stating that Fouraker did not require any more assistance in performing his job than other employees); (Doc. 55, Hood Depo. at p. 67)(stating that he did not find Fouraker less intelligent than other employees and that he and Fouraker were always able to communicate and understand one another). The defendant also refers to Fouraker's own deposition in which he explained how he would routinely perform his everyday duties of opening the store, retrieving carts from the parking lot, checking vendors at the delivery door, cleaning, crushing boxes, scanning damaged goods, all without any instructions from management. (Doc. 54, Fouraker Depo. at p. 17–30).

Next, the defendant rebuts plaintiff's additional assertions that he believed he was authorized to use his tape recorder at work even after his initial request in April of 1994 was denied by Hood. Hood commented that after Fouraker made his initial request, he spoke with William Sneed from the defendant's Human Resource department who instructed him that "under no circumstances would he [Sneed] have meeting that would be recorded, and that Ross was to leave his recorder at home and not bring it to work to record." (Doc. 55, Hood Depo. at p. 107). Hood then conveyed Sneed's instructions to Fouraker. *Id.* To further rebut Fourakers contentions, Sloan stated that when the tape recorder was discovered during their April 20, 1995 meeting, Hood informed Fouraker that he was not supposed to record anything in the store, Fouraker responded "yes, I know it, I know you told me that." (Doc. 56, Sloan Depo. at p. 59). Similarly, after he was suspended, Fouraker responded that "he knew he was wrong, that he was sorry, [and] he wouldn't do it again." *Id.* at p. 61. The defendant also notes that shortly after being suspended, Fouraker saw fellow employee Beth Grove and informed her that he had "screwed up" by recording a conversation with Hood earlier in the day. (Doc. 25, Grove Aff. at p. 2). Likewise, Truett Cathy, a friend of Fouraker's and the founder of the Chic–fil–A, Inc., stated that after his termination, Fouraker informed him that he had "tape recorded a conversation he had with his manager despite prior instructions that he was not to bring his tape recorder to the evaluation. Ross told me that base[d] on this prior instruction from his supervisor, he knew he had erred and that he was sorry." (Doc. 24, Cathy Aff. at p. 2).

Additionally, Frank Baker, a front service person who has known Fouraker for over fifteen years stated that Fouraker informed him that he had "messed up" in a conversation they had following his April 27, 1995 termination. (Doc. 21, Baker Aff. at p. 1–2). Baker also stated in his affidavit that:

> about eight to twelve months before Fouraker was terminated from Publix, Fouraker pulled out a small tape recorder and showed it to me and asked me whether I wanted to hear myself. I said yes and he

held out the tape recorder for me to talk into and then played it back for me. This happened while I was performing front service duties with Fouraker.... I would estimate that Fouraker offered to tape record me two or three different times on different occasions between that time and the time that Fouraker was terminated from employment at Publix. .... He never pulled out his tape recorder when a manager was present.

*Id.* While acknowledging that his taping of his April 20th conversation with Hood and Dytkowski was a mistake, Baker's testimony is equally important because it demonstrates how Fouraker would routinely bring his tape recorder to work and use it during working hours without management permission. Baker's testimony also reveals that Fouraker used the tape recorder for personal reasons, and not to record instructions from Publix management in an effort to successfully perform his employment duties.

Numerous courts have held that a strong inference of non-discrimination is placed on individuals who hire and later fire disabled employees who allege discrimination as a basis for their termination. As one court noted, "an employer who intends to discriminate against disabled individuals or holds unfounded assumptions that such persons are not good employees would not be apt to employ disabled persons in the first place." *Tyndall v. National Educ. Centers,* 31 F.3d 209, 215 (4th Cir.1994)(citing *Proud v. Stone,* 945 F.2d 796, 797 (4th Cir.1991)). *See also Jacques v. Clean–Up Group, Inc.,* 96 F.3d 506, 513 (1st Cir.1996); *Lowe v. J.B. Hunt Transport, Inc.,* 963 F.2d 173, 174–75 (8th Cir.1992). The facts in this case show that both Sloan and Hood, while not the ones who initially hired Fouraker in 1978, were nonetheless the ones who authorized Fouraker's numerous pay raises, afforded him full time status with the weekends off, and provided him with many other benefits not offered to other front service employees.

The court finds that the facts of the case show that Fouraker's termination was not motivated by bias against a disabled employee or by a desire to avoid making reasonable accommodations for Fouraker's disability. Rather, he was terminated for insubordination and failure to abide by management

directives. Whether Publix's belief and information resulting in Fouaker's termination was true or accurate is of no importance, so long as there was a legitimate non-discriminatory reason for the discharge. *See Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1187 (11th Cir.1984)(stating that an employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or no reason at all, as long as its action is not for a discriminatory reason). The court finds that Fouraker's failure to comply with management's directives constituted a legitimate non-discriminatory reason for his discharge. Thus, Fouraker's attempt to establish a prima facie case of discrimination based upon his disability fails because he was unsuccessful in demonstrating that his alleged termination was motivated by his disability. Accordingly, the court will grant defendant's motion for summary judgment as to Count I of plaintiff's amended complaint.

*2) Count II—Fouraker's FCRA Claim*

In Count II of plaintiff's amended complaint, he alleges that the defendant discriminated against him on the basis of his handicap in violation of the FCRA. Florida Statute chapter 760.10 states in pertinent part that "it is an unlawful employment practice for an employer to discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap or marital status." Fla. Stat. ch. 760.10(1)(a) (1995).

■ Many courts have taken judicial notice of the fact that the FCRA, Fla. Stat. ch. 760.01–760.11 (1995), is closely patterned after its federal counterpart. Accordingly, "if a Florida statute is modeled after a federal law on the same subject, the Florida statute will take on the same construction as placed on its federal prototype, insofar as such interpretation is harmonious with the spirit and policy of the Florida legislation." *Brand v. Florida Power Corp.,* 633 So.2d 504, 509 (Fla.Dist.Ct.App.1994); *see also Florida Dep't of Community Affairs v. Bryant,* 586

So.2d 1205, 1209 (Fla.Dist.Ct.App.1991); *accord Edwards v. Wallace Community College*, 49 F.3d 1517, 1521 (11th Cir.1995). Thus, the court may examine defendant's motion for summary judgment as to Count II of plaintiff's amended complaint employing traditional federal discrimination analysis.

Because the court has already found that the plaintiff failed to establish a successful cause of action under the ADA in Count I of his amended complaint, Count II will therefore fail as well. Accordingly, the court will grant the defendant's motion for summary judgment as to Count II of the plaintiff's amended complaint.

### III. Conclusion

In order to establish a prima facie case of discrimination in violation of the ADA, a plaintiff must prove that (1) he/she has a disability; (2) he/she is a qualified individual; and (3) he/she was subjected to unlawful discrimination because of his/her disability. The court finds that although Fouraker satisfied the first two elements of the above test, he failed to satisfy the third prong of proving that he was subjected to discrimination because of his disability. The court finds that the defendant presented abundant evidence showing that Fouraker received comparable if not preferential treatment while a Publix employee and that he was terminated on insubordination grounds rather than discriminatory ones. Thus, the court **GRANTS** defendant's motion for summary judgment (Doc. 16) as to Count I of plaintiff's amended complaint. Similarly, Count II alleges unlawful discrimination based on Fouraker's handicap in violation of the FCRA. Because the Florida statute is modeled after the ADA, the court may employ traditional federal discrimination analysis when evaluating Fouraker's state discrimination claim. Since the court has already found that Fouraker failed to establish a prima facie case of discrimination based on his disability in Count I of his amended complaint under the ADA, Count II will therefore fail as well. Thus, the court **GRANTS** defendant's motion for summary judgment (Doc. 16) as to Count II of plaintiff's amended complaint. There being no issue of material fact which prevents the entry of judgment, the court directs the Clerk of Court to enter judgment accordingly.

It is **SO ORDERED.**