PER CURIAM.
Bergita Evans appeals from an order of the Commission on Human Relations dismissing her claim of handicap discrimination against the Alachua County Sheriffs Office, contending that the Commission erred by ruling she was not qualified to perform the essential functions of her position as a detention officer. Bécause there is competent substantial evidence supporting the order, we affirm.
The evidence before the administrative law judge (ALJ) showed that the Alachua County Sheriffs Office (ACSO) assumed operation of the Alachua County Jail in January 1998, where Evans had worked as a detention officer since 1982. The job descriptions for detention officers require, among other things, that they process and transport inmates, maintain physical custody and control of inmates, ensure the safety of staff and inmates, make periodic tours of the jail, etc. In order to perform these tasks, the officers were required to meet or exceed applicable standards of physical agility. Evans acknowledged that officers working inside the facility were expected to respond as quickly as possible to situations involving the safety of inmates and staff by running or briskly walking to the scene.
ACSO notified employees in November 2000 that they would be required to pass a physical agility test by July 1, 2003, at *694 which time the test would become a mandatory job requirement for all detention officers. The test was designed to replicate the kinds of duties required of detention officers, and it mandated completion of nine assignments within 5:02 minutes, which included crawling, weapons firing, stair climbing, and dragging a 150-pound dummy, with sprints between each of the tasks. Evans’s treating physician, in a letter dated March, 6, 2002, advised that her morbid obesity, osteoarthritis and hypertension would prevent Evans from taking the agility test.
Evans injured her knee in an automobile accident on April 12, 2002, and ACSO placed her on temporary restricted duty and in November 2002, assigned her to the lobby and the command center. Although these areas are normally staffed by full-duty detention officers, ACSO accommodated Evans’s injury by directing that she “avoid physical confrontations, except when necessary to protect yourself or another person from imminent death or serious bodily injury.” A physician performed an independent medical examination of Evans in June 2003, and reported that “[h]er extreme obesity and advanced degenerative arthritis in the knee will definitely limit her long term ability for weight bearing exercise and physical knee stress.” The doctor recommended that she undergo a functional capacity evaluation to determine her ability to perform her job, but her chiropractor submitted a letter to ACSO on July 1, 2008, stating that Evans could not run and thus was unable to perform the physical agility test, and recommended that any assessment of her physical abilities be postponed until October “to allow for a more complete resolution of her symptoms.”
ACSO terminated Evans’s position effective August 7, 2003, due to her inability to carry out her duties in a manner that safeguarded the safety and welfare of the inmate and correctional-officer population.
In order to prove discrimination on the basis of disability, Evans was required to show (1) she is handicapped under the Florida Civil Rights Act;[1] (2) she was otherwise qualified for her job, with or without reasonable accommodations; and (3) she was terminated solely because of her handicap. See Hilburn v. Murata Elec. N. Am., Inc., 181 F.3d 1220 (11th Cir.1999). The ALJ concluded that although Evans did establish that her physical condition constituted a handicap, because the ACSO viewed her as disabled from November 2002 through August 7, 2003, the date of termination, she failed to show that she was qualified for her job, in that she could not satisfy the physical agility test because she was unable to run, and was thus disabled from performing at least two of the essential functions of her job that were incorporated into the test — rapid response and controlling prisoners.
In her first issue on appeal, Evans does not point out any specific error by the Commission or the ALJ, but instead appears to argue that because she had performed her job satisfactorily before ACSO instituted the minimum physical requirements, she was able to perform the essential functions required of her position, and that running was not an essential function. To the contrary, there was competent substantial evidence that the physical agility test measured the ability of detention offi *695 cers to perform tasks essential to the job. Evans never submitted any documentation lifting her physician’s restrictions of March 6, 2002, nor does she claim her physical abilities ever improved. Although ACSO had temporarily accommodated her disability, it was not required to redesign the work of a detention officer in a manner that would eliminate essential functions of the position. See Holbrook v. City of Alpharetta, 112 F.3d 1522, 1528 (11th Cir.1997). As a result, Evans failed to show she was qualified for the position.
In her second issue, Evans claims there was no competent substantial evidence to support three of the ALJ’s findings in the recommended order. The findings in paragraphs 21 and 89 were not essential to the ALJ’s conclusion, and the finding in paragraph 90 was supported by the evidence.
AFFIRMED.
ERVIN, BENTON, and BROWNING, JJ., concur.

. An “individual with handicaps" is defined as a person with a physical or mental impairment that substantially limits one or more of the person's major life activities, such as " 'caring for oneself, breathing, learning, and working.' ” Brand v. Fla. Power Corp., 633 So.2d 504, 510 n. 10 (Fla. 1st DCA 1994) (adopting definition from federal Rehabilitation Act).